IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

OLIVIA OUTLAW,

    PLAINTIFF,

VS.                                         CV NO.:

THE SCION GROUP LLC,

    DEFENDANT.                              JURY TRIAL DEMANDED

## COMPLAINT

### I. JURISDICTION

1. This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, and 42 U.S.C. § 12101 et seq. This is a suit authorized and instituted pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (ADA). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

2. Plaintiff seeks supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) in regard to claims of Breach of Contract, Work & Labor Done, and Quantum Meruit.

3. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last

discriminatory act (Exhibit A). Plaintiff further filed this lawsuit within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## II. PARTIES

4.  Plaintiff, Olivia Outlaw, (hereinafter "Plaintiff") is a resident of Northport, Tuscaloosa County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case. Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District, Western Division.

5.  Defendant The Scion Group LLC (hereinafter "Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama. Defendant is an entity subject to suit under 28 U.S.C. § 1331 and 42 U.S.C. § 12101 *et seq*. Defendant employed at least fifteen (15) persons during the current or preceding calendar year. Therefore, this Court has personal jurisdiction over Defendant.

## III. STATEMENT OF FACTS

6.  Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 5 above.

7.  Plaintiff suffers from a physical impairment caused by a genetic birth defect that has resulted in nine surgeries to reconstruct her feet, knees, ankles, calves, surrounding tendons, and ligaments.

8.  Plaintiff's birth defect affects the major life activities of walking and standing that significantly restricts Plaintiff as compared to the average person in the general population.

9.  Plaintiff wears non-heeled, open-toed shoes and/or regular tennis shoes with proper support in order to assist her limited ability to walk, such footwear still makes Plaintiff substantially limited as compared to the average person in the general population.

10. A reasonable person can view Plaintiff's feet and visually perceive that Plaintiff suffers from disability, and otherwise, would believe she was disabled even if she could walk in a manner similar to an average person in the general population.

11. Plaintiff worked as the General Manager for University House Communities.

12. University House Communities assigned Plaintiff to manage the apartment complex known as UH Tuscaloosa which was located at 1418 10th Avenue, Tuscaloosa, AL 35401.

13. During June 2016, Defendant purchased the apartment complex owned by University House Communities and located at 1418 10th Avenue, Tuscaloosa, AL 35401.

14. Following the purchase, Defendant retained Plaintiff as the General Manager of the apartment complex located at 1418 10th Avenue, Tuscaloosa, AL 35401.

15. On or about September 27, 2016, Plaintiff provided Defendant with a notice of resignation indicating she was accepting a position with a different company.

16. In response to Plaintiff's notice or resignation, Defendant offered Plaintiff a performance-based raise in exchange for Plaintiff remaining in Defendant's employ.

17. Plaintiff accepted Defendant's offer and remained employed as the General Manager of the apartment complex located at 1418 10th Avenue, Tuscaloosa, AL 35401.

18. The apartment complex located at 1418 10th Avenue, Tuscaloosa, AL 35401, is located near the University of Alabama and houses many students attending the school.

19. Defendant provided Plaintiff with a cell phone to contact residents, as well as to contact the parents of residents.

20. Defendant continuously employed Plaintiff until October 11, 2017.

21. Defendant employed Meredith Moon.

22. Moon served as Plaintiff's direct supervisor.

23. Defendant employed Ciara Dean.

24. Defendant employed Dean as its Director of Property Operations.

25. During Plaintiff's time as General Manager of the apartment complex located at 1418 10th Avenue, Tuscaloosa, AL 35401, working both for Defendant and Defendant's predecessor, the complex has been leased to full capacity.

26. Defendant paid Plaintiff performance bonuses for leasing the apartment complex to full capacity.

27. Defendant compensated Plaintiff with an agreed upon bonus of $40.00 per signed lease.

28. Defendant terminated Plaintiff's employment on October 11, 2017.

29. Defendant stated one of its reasons for terminating Plaintiff's employment was "not consistently walking the property or tour path to observe and correct facility concerns."

30. Defendant's reason is not true, as Plaintiff regularly walked the property and reported concerns to Moon and Dean.

31. Moon and Dean failed to respond to Plaintiff's concerns in a timely manner or sometimes failed to respond in any manner.

32. Moon walked the property with Plaintiff on five or six occasions, such that Moon had knowledge and visual confirmation of Plaintiff's disability.

33. During the inspection of a newly acquired apartment, Moon informed Plaintiff that she "wish[ed she] could wear tennis shoes every day."

34. Plaintiff utilized a Handicapped Parking Pass.

35. Moon and Dean have not disciplined multiple property managers, including but not limited to Jennifer Roswold, Becky Bitsko, Chelsea King, Jen Louth, and Tara Scott, who admit to walking the grounds of their respective complexes only once per week.

36. As part of its decision to terminate Plaintiff's employment, Defendant claimed Plaintiff failed to ensure the property was being maintained to the standards set by Defendant's management.

37. Defendant terminated Plaintiff's maintenance supervisor on or about July 31, 2017.

38. Defendant's policies and procedures prohibited Plaintiff from hiring a new maintenance supervisor for the property.

39. Dean is responsible for the decision to hire a new maintenance supervisor for the apartment complex that Plaintiff managed.

40. In order for Plaintiff to engage third-party vendors to assist with the apartment complex's maintenance needs, she was required to collect three bids, seek

approval from Moon as to the costs of the job, send the contracts to Defendant's legal department, and only after obtaining approval from Moon and the legal department, schedule the third-party vendor to perform the work.

41.     As of October 11, 2017, Dean failed to fill the position of maintenance supervisor for the apartment complex located at 1418 10th Avenue, Tuscaloosa, AL 35401.

42.     As part of its decision to terminate Plaintiff's employment, Defendant stated that residents and their parents complained.

43.     Pursuant to Defendant's policies, Plaintiff was prohibited from responding to the residents and/or their parents, until she first obtained Moon's approval about how to resolve the complaint and how to respond to the complaint.

44.     Plaintiff emailed Moon regarding the complaints and Moon did notrespond in a timely manner or failed to respond in any manner.

45.     Plaintiff consistently replied to the residents and/or parents about their complaints by informing them that she was waiting on a response from Moon.

46.     Defendant has a progressive discipline policy wherein an employee is provided a Letter of Expectations prior to any formal written reprimands.

47.     Defendant failed to provide Plaintiff with a Letter of Expectations or any formal written reprimands prior to its decision to terminate Plaintiff's employment.

48. Shortly after Defendant terminated Plaintiff's employment, Defendant placed a non-disabled person in Plaintiff's former position.

## IV. COUNT ONE - Americans with Disabilities Act - Termination

49. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 48 above as if fully set forth herein.

50. Plaintiff suffers from the physical impairment caused by a genetic birth defect that has resulted in nine surgeries to reconstruct her feet, ankles, calves, surrounding tendon, and ligaments.

51. Plaintiff's birth defect affects the major life activities of walking and standing that significantly restricts Plaintiff as compared to the average person in the general population.

52. Plaintiff wears non-heeled, open-toed shoes and/or regular tennis shoes with proper support in order to assist her limited ability to walk, such footwear still makes Plaintiff substantially limited as compared to the average person in the general population.

53. A reasonable person can view Plaintiff's feet and visually perceive that Plaintiff suffers from disability, and otherwise, would believe she was disabled even if she could walk in a manner similar to an average person in the general population.

54. As of the date of Plaintiff's termination, Plaintiff held the position of General Manager.

55. Plaintiff was qualified for the position of General Manager with or without a reasonable accommodation of her disability.

56. Defendant terminated Plaintiff's employment on October 11, 2017.

57. Defendant failed to follow its progressive discipline policy when it made the decision to terminate Plaintiff's employment.

58. Defendant's executives Dean and Moon failed to terminate or discipline other apartment General Managers for their failure to walk the property more than once per week.

59. Defendant's managers Moon and Dean refused to provide Plaintiff with business support and refused to perform responsibilities necessary to allow Plaintiff to perform her job as a General Manager, such that Defendant's purported reasons for termination are a pretext for discrimination.

60. Defendant was substantially motivated by Plaintiff's disability in making the decision to terminate Plaintiff's employment.

61. As a result of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## V. COUNT TWO – Breach of Contract

62. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 5, 26-28 above as if fully set forth herein.

63. Defendant paid Plaintiff performance bonuses for leasing the apartment complex to full capacity.

64. Defendant promised to compensate Plaintiff with an agreed upon bonus of $40.00 per signed lease.

65. The leasing period for earning these bonuses applied to leases that were signed for the term beginning in August 2018 and ending in July/August 2019.

66. From October 7, 2017, through her date of termination on October 11, 2017, Plaintiff closed approximately one-hundred forty (140) leases.

67. At the time Defendant terminated Plaintiff's employment, Defendant failed to pay Plaintiff the $40.00 bonus for leasing approximately 140 units.

68. As a result of Defendant's breach of contract, Defendant breached the contract entered into with the Plaintiff causing Plaintiff to suffer damages in the amount of approximately $5,600.00.

## VI. COUNT THREE – Work & Labor Done

69. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 5, 26-28, 62-68, above as if fully set forth herein.

70. Defendant paid Plaintiff performance bonuses for leasing the apartment complex to full capacity.

71. Defendant compensated Plaintiff with an agreed upon bonus of $40.00 per signed lease.

72.  The leasing period for earning these bonuses applied to leases that were signed for the term beginning in August 2018 and ending in July/August 2019.

73.  From October 7, 2017 through her date of termination on October 11, 2017, Plaintiff closed approximately one-hundred forty (140) leases.

74.  At the time Defendant terminated Plaintiff's employment, Defendant failed to pay Plaintiff the $40.00 bonus for leasing approximately 140 units.

75.  Plaintiff performed the labor necessary to lease the units and expected Defendant to pay her the bonus for performing such labor.

76.  As a result of Defendant's failure to compensate Plaintiff for work & labor done, Defendant caused Plaintiff to suffer damages in the amount of approximately $5,600.00.

## VII.  COUNT FOUR – QUANTUM MERUIT

77.  Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 5, 26-28, 62-76, above as if fully set forth herein.

78.  Defendant paid Plaintiff performance bonuses for leasing the apartment complex to full capacity.

79.  Defendant compensated Plaintiff with an agreed upon bonus of $40.00 per signed lease.

80.  The leasing period for earning these bonuses applied to leases that were signed for the term beginning in August 2018 and ending in July/August 2019.

81. From October 7, 2017 through her date of termination on October 11, 2017, Plaintiff closed approximately one-hundred forty (140) leases.

82. At the time Defendant terminated Plaintiff's employment, Defendant failed to pay Plaintiff the $40.00 bonus for leasing approximately 140 units.

83. Plaintiff performed the labor necessary to lease the units and Defendant enjoyed the benefits of such labor, but Defendant failed to pay Plaintiff the bonuses for performing such labor.

84. As a result of Defendant's failure to compensate Plaintiff for work & labor done, Defendant caused Plaintiff to suffer damages in the amount of $5,600.00.

## VIII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the Americans with Disabilities Act;

B. Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position she would have had, had she not been terminated;

C. Award back pay, together with employment benefits, front pay, compensatory damages; punitive damages; special damages; nominal damages;

D. Attorneys' fees and costs;

E. Plaintiff requests that the Court award Plaintiff equitable relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 12101 *et seq.* that the actions of Defendant violated the law; and,

F. Any different or additional relief as may be determined by the Court to which Plaintiff is entitled.

G. All bonuses due and owing as a result of Defendant's breach of contract.

H. All bonuses due and owing as a result of Plaintiff's work and labor done for which she expected Defendant to provide compensation.

I. All bonuses due and owing as a result of Defendant's acceptance of Plaintiff's labor.

_____
Allen D. Arnold

**OF COUNSEL:**
ALLEN D. ARNOLD, Attorney at Law
A Member of The Five Points Law Group, LLC
2151 Highland Avenue Suite 205
Birmingham, AL 35205
(205) 252-1550
F: (205) 502-4476
allen@5pointslaw.com

PLAINTIFF REQUESTS TRIAL BY STRUCK JURY

_____
OF COUNSEL

**DEFENDANT'S ADDRESS:**
The Scion Group LLC
c/o Jennifer Roswold
1300 3rd Avenue South
Birmingham, AL 35233